**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:24-cv-00298-MR-WCM**

| | |
|---|---|
| **DEBORAH JAMERSON CAUBLE, as Administratrix of the Estate of Malerie Cauble Crisp,**<br><br>          **Plaintiff,**<br><br>    **vs.**<br><br><br>**JAMES ELLIS, as Collector of the Estate of Ryan Ricky Houston, et al.,**<br><br>          **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM OF<br>DECISION AND ORDER** |

      **THIS MATTER** is before the Court on the Motions to Dismiss of

Defendants Buncombe County, Cindy Green, Tiffany Iheanacho, Avril Pinder,

and Renee Ray [Doc. 18]; Defendant Rasnelly Vargas [Doc. 23]; and

Defendant James Ellis [Doc. 25].

## I.    PROCEDURAL BACKGROUND

      On December 10, 2024, the Plaintiff Deborah Jamerson Cauble

initiated this action as the administratrix of the estate of Malerie Cauble Crisp

against the Defendants James Ellis, as the collector of the estate of Ryan

Ricky Houston; Buncombe County; Avril Pinder, in her individual and official

capacity; Cindy Green, in her individual and official capacity; Renee Ray, in her individual and official capacity; and Rasnelly Vargas, in her individual and official capacity. [Doc. 1]. All the Defendants named in their individual and official capacities are current or former Buncombe County officials. [Id. at ¶¶ 4-8].

The Plaintiff asserts four claims: (1) a wrongful death claim against all the Defendants, [Id. at ¶¶ 105-29]; (2) a Monell claim pursuant to 42 U.S.C. § 1983 against Defendant Buncombe County, [Id. at ¶¶ 130-39]; (3) a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983 against Defendant Buncombe County and Defendants Pinder, Iheanacho, Green, Ray, and Vargas, all in their individual and official capacities, [Id. at ¶¶ 140-48]; and (4) a claim for punitive damages against all the Defendants, [Id. at ¶¶ 149-51].

On February 27, 2025, Defendants Buncombe County, Pinder, Iheanacho, Green, and Ray filed a Motion to Dismiss pursuant to Rule 12(b)(6). [Doc. 18]. The Plaintiff filed a Response on March 13, 2025, [Doc. 21], and the Defendants filed a Reply on March 20, 2025, [Doc. 22].

On March 26, 2025, Defendant Vargas filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). [Doc. 23]. The Plaintiff filed

a Response on April 9, 2025, [Doc. 28], and the Defendant filed a Reply on April 15, 2025, [Doc. 30].

On March 27, 2025, Defendant Ellis filed a Motion to Dismiss the Plaintiff's claim for punitive damages pursuant to Rule 12(b)(6). [Doc. 25]. On April 3, 2025, Defendant Ellis filed an Answer to the Plaintiff's Complaint. [Doc. 27]. On April 9, 2025, the Plaintiff filed a Response to Defendant Ellis's Motion to Dismiss. [Doc. 29].

Having been fully briefed, this matter is now ripe for disposition.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on its face," a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id.

The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).  In reviewing the Complaint, the Court must accept the truthfulness of all factual

allegations but is not required to assume the truth of "bare legal conclusions."

Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of

elements of a cause of action, supported only by conclusory statements, is

not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters

v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012); see also Iqbal, 556 U.S. at

678 ("A pleading that offers 'labels or conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S.

at 555)).

## III.  FACTUAL BACKGROUND

For purposes of this Order, the Court accepts the truthfulness of the

well-pled factual allegations in the Plaintiff's Complaint and resolves all

reasonable inferences in the Plaintiff's favor.

### A.  Pretrial Monitoring of Ricky Houston Through July of 2024

In May of 2023, Ricky Ryan Houston was charged with more than a

dozen criminal offenses, including attempted first degree murder of his

estranged wife, assault on a law enforcement officer with a firearm, and

misdemeanor child abuse.  [Doc. 1 at ¶ 22].  The Buncombe County District

Court set Houston's bond at $1.6 million.  [Id. at ¶ 23].  After Houston posted

the bond, the court ordered that Houston wear an ankle bracelet and be monitored by a private third-party vendor. [Id. at ¶ 24].

Houston immediately had problems complying with the terms of his pretrial release, [Id. at ¶ 25], and the third-party vendor had problems effectively monitoring Houston. [Id. at ¶ 28]. The Buncombe County District Attorney's Office moved to revoke Houston's bond, and a revocation hearing was held on August 3, 2023. [Id. at ¶ 27]. At that hearing, Defendant Renee Ray, the Pretrial Supervisor for Buncombe County Pretrial Services ("BCPS") advised the court that BCPS could more effectively monitor Houston. [Id. at ¶¶ 29-30]. The court declined to revoke Houston's bond and instead ordered that he be placed on house arrest pending the availability of a BCPS monitoring device. [Id. at ¶ 31].

Houston eventually received a BCPS monitoring device. [Id. at ¶ 37]. Under the terms of his pretrial release, he was required to keep the device charged and connected to a cellular network so that he could be monitored, and he was restricted from coming within one thousand feet of his estranged wife. [Id. at ¶¶ 38, 40]. If Houston violated those terms, his BCPS pretrial coordinator would receive an alert, and BCPS was then expected to investigate the alert and determine whether to submit a violation notice to the court. [Id. at ¶ 40].

Defendant Rasnelly Vargas was the BCPS pretrial coordinator for Houston.  [Id. at ¶ 41].  Defendant Renee Ray was Vargas's immediate BCPS supervisor.  [Id.]  Defendants Cindy Green and Tiffany Iheanacho were BCPS supervisors for Ray and Vargas.  [Id. at ¶ 85].  And Defendant Avril Pinder, as the Buncombe County Manager, has final authority to supervise BCPS.  [Id. at ¶ 86].

Between August of 2023 and July of 2024, Houston's BCPS monitoring device sent more than 240 notifications of potential violations to Defendant Vargas.  [Id. at ¶ 42].  The device lost its GPS signal twenty-two times and its overall monitoring signal twenty-seven times, resulting in a period of longer than a week during which Houston's location could not be monitored. [Id.].  Houston encroached the restricted area within one thousand feet of his wife four times, and he tampered with the device's SIM card by attempting to remove it.  [Id. at ¶ 44].  Additionally, Defendant Vargas was aware that Houston was regularly using illegal substances, including cocaine and methamphetamine, while under BCPS supervision.  [Id. at ¶ 43].

Neither Defendant Vargas nor any other BCPS or county official notified the court of any of Houston's potential pretrial release violations between August of 2023 and July of 2024.  [Id. at ¶ 45].

## B. The Events of August 1-2, 2024

Prior to his arrest in May of 2023, Houston was in an intermittent romantic relationship with Malerie Crisp. [Id. at ¶ 49]. Crisp ended the relationship after his arrest, but Houston convinced her to stay in contact with him, and they later resumed their relationship. [Id. at ¶¶ 50-51]. By July of 2024, the relationship had turned abusive. [Id. at ¶ 51]. Crisp's friend saw Crisp with a bruise on her face and a swollen jaw, and Crisp told the friend that Houston had hit her and that she was afraid of him. [Id.].

On the evening of August 1, 2024, Crisp called one of her sons from a local convenience store and told him that she would be home in a few minutes. [Id. at ¶ 52]. Instead, however, she ended up with Houston in his car. [Id.].

Houston's BCPS monitoring device reported a "tether broken" alert at 10:03 p.m. that night. [Id. at ¶ 53]. Around 10:15 p.m., a state trooper saw Houston driving over 100 miles per hour on the highway. [Id.]. The state trooper began travelling in the direction of Houston's vehicle but did not initiate a pursuit. [Id. at ¶ 54]. A few miles down the highway, Houston attempted to pass a commercial truck but collided with it. [Id. at ¶ 55]. The collision forced Houston's vehicle into the median guardrail and then back across the highway to the shoulder, where it collided with a sign. [Id. at ¶ 55].

7

When the state trooper arrived on the scene, he found Crisp, who had had been ejected from the vehicle, on the shoulder of the highway. [Id. at ¶ 56]. Crisp cried out for help and said she was injured, and the state trooper rendered emergency aid. [Id. at ¶ 57]. When emergency medical providers arrived and began treating Crisp, they discovered that, aside from the injuries she sustained as a result of the collision, she had been stabbed by a fixed-blade object in the chest. [Id. at ¶ 59]. The stab wound proved fatal, and Crisp was pronounced dead at 11:02 p.m. [Id. at ¶ 61]. Law enforcement officers subsequently found a large fixed-blade knife, along with empty alcohol containers, in the passenger compartment of Houston's vehicle. [Id. at ¶ 62].

While the state trooper was aiding Crisp, Houston fled the scene of the collision. [Id. at ¶ 58]. He then forced his way into a residential home, assaulted the homeowner, and stole a firearm and a vehicle. [Id. at ¶ 63]. He later abandoned that stolen vehicle and stole a truck, and then he abandoned the truck and stole a sportscar. [Id. at ¶ 64]. In the early morning hours of August 2, 2024, Houston was driving the stolen sportscar at a high rate of speed when he collided with another vehicle, killing both himself and the driver of the other vehicle. [Id. at ¶ 65].

8

Later in the day on August 2, 2024, after the deaths of Crisp, Houston, and the driver of the vehicle in the second collision, Defendant Vargas filed her first violation report for Ryan Houston with the Buncombe County Courts. [Id. at ¶ 66]. After filing the violation report, Vargas resigned from her position at BCPS. [Id.].

## IV. DISCUSSION

### A. The Plaintiff's § 1983 Claims

The Plaintiff asserts two claims pursuant to 42 U.S.C. § 1983: a <u>Monell</u> claim against Defendant Buncombe County, [Doc. 1 at ¶¶ 130-39]; and a Fourteenth Amendment substantive due process claim against Defendant Buncombe County and Defendants Pinder, Iheanacho, Green, Ray, and Vargas ("the individual Defendants"), [Id. at ¶¶ 140-48].

### 1. The Plaintiff's Substantive Due Process Claim Against the Individual Defendants

The Plaintiff asserts a substantive due process claim against all the individual Defendants in both their individual and official capacities. As a preliminary matter, because a § 1983 suit against an individual in her official capacity is "essentially a claim against the [entity]," such claims "should be dismissed as duplicative" when the entity is also named as a defendant. <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004). Accordingly, the Court will dismiss the Plaintiff's substantive due process claims against the

individual Defendants in their official capacities as duplicative of the Plaintiff's substantive due process claim against Defendant Buncombe County.

The Plaintiff alleges that the individual Defendants, in failing to report Houston's violations of the terms and conditions of his pretrial release, engaged in "conscience-shocking conduct" that "directly and proximately caused the terrorization and death of Malerie Crisp," in violation of her substantive due process rights under the Fourteenth Amendment. [Doc. 1 at ¶¶ 144, 146-47].

To assert a § 1983 substantive due process claim, a plaintiff "must allege both the deprivation of his life, liberty, or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" Callahan v. N. Carolina Dep't of Pub. Safety, 18 F.4th 142, 145 (4th Cir. 2021) (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129 (1992)). Because a state actor must cause the relevant deprivation, generally "the state is not responsible for a third party's conduct which infringes on those interests." Id.

For example, in Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Supreme Court concluded that a county social services department, despite failing to remove a child from his father's custody after receiving reports that the father was abusing the child and

10

documenting the child's injuries, could not be held liable when the father beat the child into a coma.  Id. at 192-94.  The Supreme Court explained that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  Id. at 196.  Accordingly, "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause."  Id. at 197.  Thus, in Deshaney, "[t]he most that can be said of the state functionaries . . . is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."  Id. at 203.  States may create systems of liability in tort for such failures to act by public officials, but no such liability arises from the Due Process Clause of the Fourteenth Amendment.  See id.; see also Callahan, 18 F.4th at 148 ("The Due Process Clause does not convert state-law tort claims into constitutional violations actionable under § 1983.").

Here, the Plaintiff alleges that the individual Defendants failed to protect Crisp from Houston's violence by failing to adequately supervise Houston.  The Plaintiff alleges that the individual Defendants stood by and did nothing when circumstances—the 240 unreported potential violations— dictated a more active role for them.  As in Deshaney, however, a failure to

act is an inadequate basis for a substantive due process violation. The Fourteenth Amendment did not provide Crisp an affirmative right to governmental protection, even if stricter supervision of Houston may have protected her from the harm she suffered.

Nevertheless, the Plaintiff argues that her substantive due process claim survives under the state-created danger doctrine, which provides an exception to the general rule that state actors are not liable under the Due Process clause for harm caused by third parties. [Doc. 21 at 16].

"The state-created danger doctrine applies where (1) the state actor directly 'created or increased the risk' of the harm to the victim and (2) 'did so directly through affirmative acts.'" Callahan, 18 F.4th at 146 (quoting Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015)). However, "the state-created danger doctrine is narrowly drawn, and the bar for what constitutes an 'affirmative act' is high." Turner v. Thomas, 930 F.3d 640, 645 (4th Cir. 2019) (quoting Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995)). "It is not enough to reframe a failure to protect against a danger into an affirmative act." Callahan, 18 F.4th at 148. "The 'concept of "affirmative acts"' should not extend 'beyond the context of immediate interactions between the [state actor] and the plaintiff." Id. at 147 (quoting Rosa, 795 F.3d at 441). As a result, "[a] 'downstream, but-for connection' between the state's conduct and

12

the alleged harm 'stretches the "affirmative acts" concept too far' to support a state-created danger claim." Id. (quoting Rosa, 795 F.3d at 442). To date, the Fourth Circuit has "never issued a published opinion recognizing a successful state-created danger claim." Callahan, 18 F.4th at 147 (quoting Turner, 930 F.3d at 646).

Here, the Plaintiff argues that the individual Defendants "affirmatively acted in offering to supervise Ryan Houston while he awaited trial" and then, by "refus[ing] to undertake" their supervisory responsibilities, "created a dangerous condition which directly increased the risk of harm to Malerie Crisp." [Doc. 21 at 16]. Therefore, as alleged by the Plaintiff, it was the individual Defendants' failure to adequately supervise Houston that created the dangerous condition. BCPS's affirmative offer to supervise Houston did not by itself create or increase the risk of harm to any potential victim. Moreover, the Plaintiff alleges no immediate interactions between Crisp and the individual Defendants.

Drawing all reasonable inferences in the Plaintiff's favor, the relationship between the individual Defendants' conduct and Crisp's harm is, at most, a downstream, but-for connection. As a result, the Plaintiff's state-created danger theory is foreclosed by Fourth Circuit precedent. Because the Plaintiff's allegations cannot establish that any of the individual

Defendants deprived Crisp of her life, liberty, or property interest, the Plaintiff cannot state a claim for relief against them under the Fourteenth Amendment.

Accordingly, the Court will dismiss the Plaintiff's substantive due process claim against the individual Defendants. To the extent that Count Four of the Plaintiff's Complaint seeks punitive damages pursuant to the Plaintiff's § 1983 claim against the individual Defendants, the Court will also dismiss that punitive damages claim.

### 2. The Plaintiff's Substantive Due Process Claim Against Buncombe County

The Plaintiff also asserts a substantive due process claim against Defendant Buncombe County. The Plaintiff alleges that "Buncombe County had a custom and *de facto* policy of not reporting violations of the terms and conditions of pretrial release set by the judiciary," [Doc.1 at ¶ 143], as well as a custom and *de facto* policy of "failing to adequately train, supervise or discipline employees of BCPS in connection with fundamental tasks involving reporting violations," [Id. at ¶ 132]. She further alleges that the county's customs and *de facto* policies "proximately and directly caused the terrorization, injuries and death of Malerie Crisp" in violation of her substantive due process rights under the Fourteenth Amendment. [Id. at ¶ 138].

In <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978), the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." <u>Id.</u> at 690. Municipalities can be sued when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the municipality's] officers." <u>Id.</u> Liability, however, attaches "only where the municipality itself causes the constitutional violation at issue." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

Fourth Circuit law is clear that where "there are no underlying constitutional violations by any individual, there can be no municipal liability." <u>Grayson v. Peed</u>, 195 F.3d 692, 697 (4th Cir. 1999); <u>see also</u> <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."); <u>Belcher v. Oliver</u>, 898 F.2d 32, 36 (4th Cir. 1990) ("Because it is clear that there was no constitutional violation we need not reach the question of whether a municipal policy was responsible for the officers' actions.").

Therefore, because the Plaintiff has failed to state a viable constitutional claim against the individual Defendants, the Plaintiff cannot state a Monell claim against Defendant Buncombe County.

Accordingly, the Court will dismiss the Plaintiff's Monell claim and substantive due process claim against Defendant Buncombe County. To the extent that Count Four of the Plaintiff's Complaint seeks punitive damages pursuant to the Plaintiff's § 1983 claim against Defendant Buncombe County, the Court will also dismiss that punitive damages claim.

## B.    The Plaintiff's Wrongful Death Claim

The Plaintiff's state-law wrongful death claim is before the Court pursuant to 28 U.S.C. § 1367(a), which provides the Court with supplemental jurisdiction over claims sufficiently related to claims within the Court's original jurisdiction that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may "decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court may also decline to exercise supplemental jurisdiction over a claim when "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

16

The only basis for subject matter jurisdiction asserted by the Plaintiff is that federal questions arise from the alleged § 1983 violations. Those claims have been dismissed, raising the question of whether this Court should retain jurisdiction over the balance of Plaintiff's claims.

Well-settled Fourth Circuit law provides that "[a] court has 'wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.'" Henderson v. Harmon, 102 F.4th 242, 252 (4th Cir. 2024) (quoting Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110. Additional factors include "the existence of any state limitations bars to refiling in state court" and "the existence of some significant issue of state law best resolved in state court." Id. at 112.

Here none of the relevant factors weigh in favor of retaining jurisdiction over the Plaintiff's state-law wrongful death claim. This matter is still in the early stages of litigation, and the Plaintiff has almost a full year before the state statute of limitations for her wrongful death claim expires.[1] This case implicates no federal entities, officials, or policies. The events underlying this

---

[1] Plus whatever extensions N.C. Rule of Civ. Pro 41(a)(2) may afford.

case occurred in Buncombe County, North Carolina, all the Defendants are residents of Buncombe County, and counsel for all parties reside in the Western District of North Carolina. Additionally, the Plaintiff pled federal question jurisdiction pursuant to 28 U.S.C. § 1331, and, pursuant to 28 U.S.C. § 1332(c)(2), the Plaintiff, as a legal representative of the state of the decedent, is deemed a citizen of North Carolina. The Court finds that no considerations of convenience, fairness, or federal policy incline in favor of retaining jurisdiction.

Moreover, the central remaining dispute at this stage of the litigation concerns the applicability of the public duty doctrine, which is an affirmative defense available under North Carolina law. The applicability of that affirmative defense—which provides that when a governmental entity owes a duty to the public, individual plaintiffs may not enforce the duty in tort— would likely determine the success of the motions to dismiss filed by Defendant Vargas and by Defendants Buncombe County, Pinder, Iheanacho, Green, and Ray. The applicability of the public duty doctrine in North Carolina is a complex issue of state law. See Strickland v. Univ. of N. Carolina at Wilmington, 712 S.E.2d 888, 890 (N.C. Ct. App. 2011) ("Despite the presumable simplicity of a doctrine susceptible to such succinct encapsulation, application of the public duty doctrine in the North Carolina

courts, as well as in other jurisdictions, has become a particularly prickly issue.").

Therefore, having considered the relevant factors, the Court will decline to exercise supplemental jurisdiction over the Plaintiff's wrongful death claim. To the extent that Count Four of the Plaintiff's Complaint seeks punitive damages pursuant to the Plaintiff's wrongful death claim, the Court will also decline to exercise supplemental jurisdiction over that punitive damages claim. Accordingly, the Court will dismiss the Plaintiff's wrongful death claim and related punitive damages claim without prejudice. Henderson, 102 F.4th at 251 ("[W]hen a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." (citation and internal quotations marks omitted)).

## V.    CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are granted. The Court will dismiss Counts Two and Three of the Plaintiff's Complaint with prejudice. To the extent that Count Four of the Plaintiff's Complaint seeks punitive damages pursuant to Counts Two and Three, the Court will dismiss Count Four with prejudice. The Court will dismiss Count

One of the Plaintiff's Complaint without prejudice. To the extent that Count Four of the Plaintiff's Complaint seeks punitive damages pursuant to Count One, the Court will dismiss Count Four without prejudice.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Motions to Dismiss of Defendants Buncombe County, Cindy Green, Tiffany Iheanacho, Avril Pinder, and Renee Ray [Doc. 18]; Defendant Rasnelly Vargas [Doc. 23]; and Defendant James Ellis [Doc. 25] are **GRANTED**.

Counts Two and Three of the Plaintiff's Complaint [Doc. 1] are **DISMISSED WITH PREJUDICE**. To the extent that Count Four of the Plaintiff's Complaint [Doc. 1] seeks punitive damages pursuant to the Plaintiff's § 1983 claims, Count Four is **DISMISSED WITH PREJUDICE.**

Count One of the Plaintiff's Complaint [Doc. 1] is **DISMISSED WITHOUT PREJUDICE**. To the extent that Count Four of the Plaintiff's Complaint [Doc. 1] seeks punitive damages pursuant to the Plaintiff's wrongful death claim, Count One is **DISMISSED WITHOUT PREJUDICE.**

The Clerk of Court is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 10, 2025

Martin Reidinger
Chief United States District Judge